**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

MICHAEL DOMANN AND
MARY JO DOMANN
10824 Watercress Road
Strongsville, Ohio 44149

      Plaintiffs,

      vs.

FRONTIER AIRLINES
C/O CORPORATION SERVICE
COMPANY
3366 Riverside Drive, #103
Upper Arlington, Ohio 43221

      AND

HUNTLEIGH USA CORP.
5300 Riverside Drive
Cleveland, Ohio 44135

      AND

CITY OF CLEVELAND
Cleveland Hopkins Airport
C/O 601 Lakeside Avenue E.
Cleveland, Ohio 44114

      Defendants.

Case No. 1:22-cv-2243

JUDGE BRIDGET MEEHAN BRENNAN

**DEFENDANT FRONTIER AIRLINES,
INC.'S AND DEFENDANT CITY OF
CLEVELAND'S RESPONSE TO SHOW
CAUSE ORDER**

**DEFENDANT FRONTIER AIRLINES, INC.'S AND DEFENDANT CITY OF
CLEVELAND'S RESPONSE TO SHOW CAUSE ORDER**

## <u>TABLE OF CONTENTS</u>

I.      BRIEF STATEMENT OF THE ISSUE(S) TO BE DECIDED...........................................1

II.     SUMMARY OF THE ARGUMENT PRESENTED..........................................................1

III.    JURISDICTIONAL FACTS AND PROCEDURAL HISTORY ........................................2

      A.     Facts and Allegations ...............................................................................2

      B.     Alleged Causes of Action ..........................................................................4

      C.     Procedural Posture ...................................................................................5

      D.     Federal Framework for the Provision of Wheelchair Assistance and Use of an Aisle Chair During the Boarding Process .........................................5

IV.    ARGUMENTS AND AUTHORITIES.............................................................................9

      A.     Fraudulent Joinder Standards...................................................................9

      B.     As a Matter of Law, the City Had No Duty to Provide the Aisle Chair or the Wheelchair Agent, Which Were Provided by Frontier and Huntleigh Under the ACAA and Part 382. ...........................................................10

      C.     There Is No Factual Basis Whatsoever and Plaintiffs Otherwise Fail to State Claims Against the City Under Either Title 49 or Title 29...................................11

            1.     Plaintiffs Do Not Allege That the Terminal Buildings or Facilities at CLE Were Inaccessible, So Plaintiffs' Title 29 Claim Against the City Fails As a Matter of Law.................................................................11

            2.     Plaintiffs Fail to Allege Any Violations of Specific Statutes or Regulations Under "Title 49," and As a Matter of Law Cannot State a Claim Against the City Under the ACAA.................................................13

      D.     Plaintiffs' Complaint Does Not Allege a Premises Liability Claim Against the City, Nor Do the Alleged Facts Give Rise to a Premises Liability Claim As a Matter of Law. ..............................................................................15

      E.     Even Without Finding Fraudulent Joinder and Diversity Jurisdiction, This Court Has Federal Question Jurisdiction Under Section 1331. ............................17

LOCAL RULE 7.1(f) CERTIFICATION...................................................................................20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Albright, ex rel. Albright v. Univ. of Toledo*,
   No. 01AP-130, 2001 WL 1084461 (Ohio Ct. App. Sept. 18, 2001)........................................15

*Alexander v. Elec. Data Sys. Corp.*,
   13 F.3d 940 (6th Cir. 1994) ...................................................................................................17

*Am. Well Works Co. v. Layne & Bowler Co.*,
   241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987 (1916)..................................................................17

*Anaple v. Standard Oil Co.*,
   162 Ohio St. 537 (1955)..........................................................................................................16

*Bowen v. Columbus Airport Ltd. P'ship*,
   2008-Ohio-763 ........................................................................................................................16

*Brady v. Indem. Ins. Co. of N. Am.*,
   68 F.2d 302 (6th Cir. 1933) ....................................................................................................10

*Brazell v. Waite*,
   525 Fed. App'x 878 (10th Cir. 2013) ......................................................................................10

*Brooks v. Prospect of Orlando, Co.*,
   No. 3:16-CV-1089-J-34JBT, 2017 WL 6319552 (M.D. Fla. Dec. 11, 2017).......................7, 8

*Brown v. Alaska Air Grp., Inc.*,
   No. CV-11-0091-WFN, 2011 WL 2746251 (E.D. Wash. July 14, 2011) ................................8

*Casias v. Wal-Mart Stores, Inc.*,
   609 F.3d 428 (6th Cir. 2012) ...............................................................................................3, 10

*Easterling v. Jones*,
   No. 1:20-CV-00182-GNS, 2021 WL 1723230 (W.D. Ky. Apr. 30, 2021) .............................14

*Edick v. Allegiant Air, LLC*,
   No. 2:11-CV-259 JCM GWF, 2012 WL 1463580 (D. Nev. Apr. 27, 2012) ...........................8

*Est. of Kekona v. Alaska Airlines, Inc.*,
   No. C18-0116-JCC, 2018 WL 1317826 (W.D. Wash. Mar. 14, 2018) ..................................19

*Fallon v. Meissner*,
   66 F. App'x 348 (3d Cir. 2003) ..............................................................................................18

*Fisher v. City of Tucson*,
    No. CIV 77-037-TUC-MAR, 1977 WL 15530 (D. Ariz. Nov. 23, 1977), aff'd,
    663 F.2d 861 (9th Cir. 1981) ............................................................................18

*Freeman v. Sullivan*,
    954 F. Supp. 2d 730 (W.D. Tenn. 2013)..........................................................18

*Gilstrap v. United Air Lines, Inc.*,
    709 F.3d 995 (9th Cir. 2013) ....................................................................6, 7, 8

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005)...............................17

*Griffin v. Sanders*,
    914 F. Supp. 2d 864 (E.D. Mich. 2012).............................................................19

*Hall v. Delta Air Lines, Inc.*,
    No. 2:16-CV-00417-JAW, 2018 WL 1570788 (D. Me. Mar. 30, 2018) .................8

*Hammond v. Cleveland*,
    2012-Ohio-494................................................................................................16

*Harwell v. Tullahoma City Sch.*,
    No. 421CV00008TRMCHS, 2021 WL 6275686 (E.D. Tenn. May 27, 2021).......18

*Kasten v. Port Auth. of New York & New Jersey*,
    No. 98-CV-4988, 2002 WL 31102689 (E.D.N.Y. Sept. 10, 2002) .....................12

*Kowalski v. Postmaster Gen. of United States*,
    811 F. App'x 733 (3d Cir. 2020) .....................................................................18

*Lieberman v. Delaware*,
    70 F. App'x 630 (3d Cir. 2003) .......................................................................18

*Logan v. Matveevskii*,
    175 F. Supp. 3d 209 (S.D.N.Y. 2016)..............................................................12

*McLaughlin v. Andy's Coin Laundries, LLC*,
    2018-Ohio-1798, 112 N.E.3d 57......................................................................4

*Miglets v. Erie Lackawanna Ry. Co.*,
    No. C78-1231Y, 1979 WL 205 (N.D. Ohio Feb. 28, 1979) ...............................18

*Nodleman v. Aero Mexico*,
    528 F. Supp. 475 (C.D. Cal. 1981) .............................................................12, 13

*Coyne ex rel. Ohio v. Am. Tobacco Co.*,
    183 F.3d 488 (6th Cir. 1999) ................................................................9, 10, 17

*Paschal v. Rite Aid Pharmacy, Inc.*,
   18 Ohio St.3d 203, 480 N.E.2d 474 (1985) ...........................................16

*Powers v. Salvation Army*,
   2004-Ohio-7175 (6th Dist.) .................................................................16

*Roddy v. Shong*,
   No. C83-762, 1983 WL 654 (N.D. Ohio Nov. 30, 1983) ......................18

*Russell v. Johnson & Johnson, Inc.*,
   610 S.W.3d 233 (Ky. 2020) .................................................................14

*Saginaw Hous. Comm'n v. Bannum, Inc.*,
   576 F.3d 620 (6th Cir. 2009) ...............................................................10

*Strong v. Telectronics Pacing Sys., Inc.*,
   78 F.3d 256 (6th Cir. 1996) .................................................................17

*Summers v. Delta Air Lines, Inc.*,
   805 F.Supp.2d 874 (N.D. Cal. 2011) .....................................................8

*Triplet v. Nw. Airlines, Inc.*,
   No. 4:08CV04074 JLH, 2009 WL 1812904 (E.D. Ark. June 24, 2009) ................19

*Tucker v. Pope*,
   2010-Ohio-995 (2d Dist.).....................................................................15

*VanWyngarden v. Am. W. Airlines, Inc.*,
   No. 4:05-CV-00024, 2005 WL 8157980 (S.D. Iowa June 14, 2005) ....................19

*Weikert v. Delta Air Lines, Inc.*,
   No. CV 20-11277, 2021 WL 5988283 (E.D. Mich. Oct. 25, 2021) ......................7

*Whetstone v. Binner*,
   146 Ohio St.3d 395, 2016-Ohio-1006, 57 N.E.3d 1111 ..........................4

**Statutes**

28 U.S.C. § 1331 .....................................................................................*passim*

28 U.S.C. § 1332(a)(1).......................................................................1, 2, 5, 9, 17

28 U.S.C. § 1367 ..........................................................................................19

28 U.S.C. § 1446(b)(2) ....................................................................................5

29 U.S.C. 792 § 502........................................................................................4, 11

Air Carrier Access Act, 49 U.S.C. § 41705 .............................................6, 7, 15, 19

iv

Architectural Barriers Act of 1968, 42 U.S.C. §§ 4151-57 ................................................11

Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*.............................................12, 18

**Other Authorities**

14 C.F.R. § 382.1 ...............................................................................................7

14 C.F.R. § 382.91(d) ......................................................................................7, 10

14 C.F.R. § 382.95(a)........................................................................................7, 10

49 C.F.R. § 27.71 ...............................................................................................12

**Rules**

Fed. R. Civ. P. 12(b)(6).....................................................................................10

Local Rule 7.1(f)..................................................................................................20

Pursuant to the Court's October 30, 2023, Show Cause Order, Defendant Frontier Airlines, Inc. ("Frontier") and Defendant City of Cleveland (the "City") (collectively, the "Defendants"[1]) hereby clarify how the City was fraudulently joined and show why this matter should not be remanded for lack of subject matter jurisdiction.

## I.       BRIEF STATEMENT OF THE ISSUE(S) TO BE DECIDED

Pursuant to the Court's Show Cause Order, the Defendants herein clarify that the City was fraudulent joined, so there is diversity jurisdiction under Section 1332(a)(1). Even if the City was not fraudulently joined, however, there is a separate and alternative basis for this Court's original jurisdiction under Section 1331.

## II.      SUMMARY OF THE ARGUMENT PRESENTED

This personal injury case solely arises from the alleged movement, condition, and management of a wheelchair used by Plaintiff Michael Domann ("Plaintiff"). The movement, condition, and management of the wheelchair allegedly caused Plaintiff to fall. There is no other alleged cause of Plaintiff's fall.

Plaintiff allegedly fell from the wheelchair while in a jet bridge at Cleveland Hopkins International Airport ("CLE"), which is owned and operated by the City. The City, however, has no factual nexus whatsoever with the movement, condition, or management of the wheelchair. Instead, as required by federal law, the alleged wheelchair and the accompanying wheelchair attendant were solely provided by Frontier and/or its agent, Defendant Huntleigh USA Corp. ("Huntleigh"). Additionally, Plaintiffs do not allege that any airport buildings or terminal facilities at CLE were inaccessible or that any such inaccessibility caused or contributed to his fall. Furthermore, Plaintiffs do not allege that any hazards or defects on the premises at CLE caused or

---

[1] The Defendants, Frontier and the City, are represented by the same undersigned counsel pursuant to a contractual tender of defense made by the City to Frontier, which was accepted by one of Frontier's insurers. *See* Doc #: 10.

contributed to his fall. In short, as a matter of law, the City owned no duty to Plaintiff relative to the wheelchair that allegedly caused Plaintiff's injury. Plaintiff thus fail to state a claim against the City upon which relief can be granted.

As demonstrated in the Notice of Removal (Doc #: 1), there are two separate and alternative bases for the Court's original jurisdiction in this action: diversity jurisdiction under 28 U.S.C. § 1332(a)(1); and federal question jurisdiction under 28 U.S.C. § 1331. Regarding the first basis, diversity jurisdiction under Section 1332(a)(1), the preponderance of the evidence demonstrates a reasonable possibility that the amount in controversy exceeds $75,000, exclusive of interest and costs. (*Id*. at PageID#8-9 ¶¶ 27-29) Additionally, Plaintiffs are citizens of Ohio, while and there is complete diversity of citizenship with Defendants Frontier and Huntleigh, which are are citizens of Colorado, Missouri, and Texas. (*Id*. at PageID#4 ¶12) As set out in the Notice of Removal, the City is a fraudulently joined defendant. (*Id*. at PageID#5-8 ¶¶ 18-26) Pursuant to the Court's Show Cause Order, the Defendants will herein clarify that the City was fraudulent joined. Even if this Court determines that the City was not fraudulently joined, however, then there is a separate and alternative basis for this Court's original jurisdiction under Section 1331.

## III.    JURISDICTIONAL FACTS AND PROCEDURAL HISTORY

### A.    Facts and Allegations

The Complaint claims that Plaintiff is a paraplegic who allegedly has no use of his legs and uses a wheelchair. (Doc #: 1-2 at ¶ 2) On February 16, 2022, Plaintiff was a passenger on a Frontier flight from CLE to Orlando, Florida. (*Id*. at ¶ 3) Huntleigh allegedly "provides wheelchair services in and about" CLE. (*Id*. at pg. 2) In fact, Huntleigh provides wheelchair services for Frontier passengers at CLE pursuant to a Standard Ground Handling Agreement. (Doc #: 1-3).

For purposes of boarding the flight and being transported to his seat, Plaintiff allegedly is required to be transferred to an "aisle chair": i.e., a wheelchair that fits in narrow aircraft aisles

(Doc #: 1-2 at ¶ 3), which is also known as a "boarding wheelchair." "[E]mployees of the airlines [Frontier] or their agents [Huntleigh]" allegedly wheeled Plaintiff from the gate, down the jet bridge, and to the entrance to the aircraft, where was to be transferred to an aisle chair for boarding. (*Id.* at ¶ 4) Plaintiff alleges that only one Frontier or Huntleigh employee was assigned to wheel him onto the aircraft. (*Id.*) The one Frontier or Huntleigh employee assigned to Plaintiff allegedly turned away, and Plaintiff was "dumped" from the aisle chair to the ground in the jet bridge. (*Id.*)

Plaintiff does not allege that he ever sought any wheelchair assistance from City personnel. (Doc #: 1-2) In fact, Plaintiff does not allege that any City employees or agents were servicing or attending to Plaintiff at any time, nor were any City employees even present. (Doc #: 1-2) As a matter of fact, a Huntleigh employee and wheelchair agent by the name of Felicia Starkey ("Starkey") was attending to Plaintiff at the time of the alleged incident. (**Exhibit A**: Huntleigh statement[2]) Huntleigh's wheelchair agent, Starkey, was the one and only person present with Plaintiff at the time of the alleged incident. (*Id.*; Doc #:1-2 at ¶4)

Certainly, the City did not own, operate, or control the aircraft to which Plaintiff was being transferred when he fell, and Plaintiffs do not allege so. Additionally, Plaintiffs do not allege that the City owned, operated, or controlled the jet bridge where Plaintiff allegedly fell. (Doc #: 1-2) Even if the City owned, operated, or controlled the jet bridge, Plaintiffs do not allege that there were any defects or hazards on the jet bridge or that any such defects or hazards caused or contributed to Plaintiff's fall from the wheelchair. (*Id.*) Instead, the Complaint only alleges that Plaintiff fell due to the movement, condition, and management of the aisle chair by "employees of the airlines [Frontier] or their agents [Huntleigh]." (*Id.* at ¶4)

---

[2] "The court may look to material outside the pleadings for the limited purpose of determining whether there are 'undisputed facts that negate the claim.'" *Casias v. Wal-Mart Stores, Inc.*, 609 F.3d 428, 433 (6th Cir. 2012).

B.     **Alleged Causes of Action**

Plaintiffs' Complaint raises four counts collectively alleged against all three Defendants, alike. (Doc #: 1-2) Plaintiffs allege four counts but only two substantive causes of action: Count One – "Strict Liability"; and Count II – "Negligence and Reckless Disregard."[3] (*Id*. at ¶¶6-12).

Plaintiffs' strict liability claim alleges, "[u]nder 49 USC and 29 USC…airlines and airports have a duty to protect individuals utilizing these airports and airlines and have a special duty of care in making these facilities safe and accessible to the handicapped." (*Id*. at ¶6) Plaintiff allegedly "was in the care of the agents of the Defendants on the runway between the airplane door and the aisles the craft those agents in 'respondent superior' where strictly and wholly responsible for [Plaintiff's] care and Defendants are strictly liable in Tort for the acts of those agents." (*Id*. at ¶7)

Plaintiffs' negligence claim alleges, "Section 502 29 USC 792 requires that airports and airlines in [sic] their respective agents are required to make their facilities accessible for handicapped people. Defendants therefore had a duty of care toward ticket holder Plaintiff to care for his special needs in the boarding process." (*Id*. at ¶9) Defendants allegedly "breached that duty of care in allowing Plaintiff to fall from the 'aisle chair' which was not properly managed or equipped. (*Id*. at ¶10) Plaintiffs also allege that "the absence of a second employee to help him with the transfer to and the movement of the 'aisle chair' constitutes a willful and wanton and reckless disregard for Plaintiff in a disgraceful violation of 29 USC 92 [sic]." (*Id*. at ¶11)

---

[3] Count Three is for "Punitive Damages" (*see Whetstone v. Binner*, 146 Ohio St.3d 395, 2016-Ohio-1006, 57 N.E.3d 1111, ¶ 20 ("[p]unitive damages are not an independent cause of action; rather, they arise incident to compensable harm")), and Court Four is for Plaintiff's wife's alleged "Loss of Consortium" (*see McLaughlin v. Andy's Coin Laundries, LLC*, 2018-Ohio-1798, ¶ 35, 112 N.E.3d 57, 63 (loss of consortium claim is merely derivative of the other claims and cannot stand independently)).

### C.      Procedural Posture

On December 13, 2022, Frontier timely filed a Notice of Removal (Doc #: 1) Therein, Frontier alleges two separate and alternative bases for this Court's subject matter jurisdiction under 28 U.S.C. §§1331 and 1332(a)(1). (*Id*.) Frontier was the only defendant joined and served at the time of removal. The City subsequently was served and filed a timely notice pursuant to 28 U.S.C. § 1446(b)(2) indicating its consent to the removal and this Court's original jurisdiction. (Doc #: 8) To date, Huntleigh has not been properly joined and served.

On October 30, 2023, the Court issued a text-only Show Cause Order, which states in relevant part, "Upon review of Defendant Frontier Airlines' notice of removal (Doc. No. 1), it is not clear that this Court has subject matter jurisdiction over the instant action. Specifically, it is not clear that Defendant City of Cleveland was fraudulently joined. Accordingly, the parties are ordered to show cause why this matter should not be remanded for lack of jurisdiction."

The Court's Show Cause Order also set a briefing schedule, including in part, "Defendants shall respond to this order on or before 11/29/2023; if Plaintiffs wish to file a responsive brief, said brief shall be due on or before 12/14/2023." Nevertheless, on November 16, 2023 – nearly two weeks before the Defendants' response was due – Plaintiffs filed a "Motion for Remand for Lack of Diversity Jurisdiction." (Doc #: 12) Therein, Plaintiffs appear to abandon their claims against the City "under 49 USC and 29 USC," as cited above. Instead, Plaintiffs argue for the first time that the City is a properly joined defendant pursuant to a new theory of premises liability. (*Id*.)

### D.      Federal Framework for the Provision of Wheelchair Assistance and Use of an Aisle Chair During the Boarding Process

Again, this personal injury case solely arises from the alleged movement, condition, and management of an aisle chair, which allegedly caused Plaintiff to fall in the jet bridge when boarding his Frontier flight. (Doc #: 1-2) The provision of wheelchairs and wheelchair assistance

5

for boarding commercial flights is pervasively governed by federal law: namely, the Air Carrier

Access Act ("ACAA"), 49 U.S.C. § 41705. As summarized by the Ninth Circuit,

> The ACAA is an amendment to the Federal Aviation Act ("FAA"). The original FAA, passed in 1958, included a requirement that air carriers not "subject any particular person…to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever." 49 U.S.C.App. § 1374 (1982), repealed by Pub.L. No. 103–272, 108 Stat. 745, 1141 (1994). This requirement was repealed by the Airline Deregulation Act of 1978, 49 U.S.C.App. § 1301, repealed by Pub.L. No. 103–272, 108 Stat. 745, 1141 (1994), leaving passengers with disabilities without express protection against discrimination by commercial airlines. *See Shinault v. Am. Airlines, Inc.*, 936 F.2d 796, 802 (5th Cir.1991).
>
> A different statute, § 504 of the Rehabilitation Act of 1973 [under Title 29] provides generally that individuals with disabilities may not be excluded from or discriminated against by federally-funded programs. *See U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 599, 106 S.Ct. 2705, 91 L.Ed.2d 494 (1986). In 1979, the Civil Aeronautics Board, the federal agency then in charge of airline regulation, promulgated regulations applying § 504 to those commercial airlines that received direct federal subsidies. *Id*. at 600-01, 106 S.Ct. 2705. Organizations representing individuals with disabilities (collectively, Paralyzed Veterans of America, or "PVA"), challenged those regulations, seeking to apply § 504 to all commercial airlines, on the ground that airlines not receiving direct federal subsidies were indirect recipients of federal funding for airport construction and for the federally operated air traffic control system. *Id*. The Supreme Court rejected PVA's arguments, holding that commercial airlines were "beneficiaries," not "recipients," of federal grants for airport construction and that the air traffic control system was not "a form of federal financial assistance to airlines." *Id*. at 607, 611, 106 S.Ct. 2705.
>
> Congress responded to *Paralyzed Veterans* by passing the ACAA. An amendment to the FAA, the ACAA "provide[d] that prohibitions of discrimination against handicapped individuals shall apply to air carriers." Air Carrier Access Act of 1986, Pub.L. No. 99–435, § 2(a), 100 Stat. 1080; *see Shinault*, 936 F.2d at 802. In its original form, the ACAA prohibited air carriers from "discriminat[ing] against any otherwise qualified handicapped individual, by reason of such handicap, in the provision of air transportation," and directed the Secretary of Transportation to "promulgate regulations to ensure non-discriminatory treatment of qualified handicapped individuals consistent with safe carriage of all passengers on air carriers." Air Carrier Access Act of 1986, Pub.L. No. 99–435, § 3, 100 Stat. 1080.5.

*Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 999-1000 (9th Cir. 2013).

The Department of Transportation ("DOT") issued regulations, codified at 14 C.F.R. Part

382, specifying the detailed requirements that airlines must meet to comply with the ACAA. *Id.* at 1000; *see also* 14 C.F.R. § 382.1 ("The purpose of this part is to carry out the Air Carrier Access Act of 1986, as amended."). Pursuant to 14 C.F.R. Part 382, an "air carrier" is defined as one that undertakes to engage in air transportation: i.e., an airline. 14 C.F.R. § 382.3. Part 382 requires airlines "to take steps to accommodate passengers with a disability." 14 C.F.R. § 382.1. Airlines *alone* have the duty to provide or ensure the provision of wheelchair assistance for passengers with disabilities. 14 C.F.R. § 382.95(a) ("As a[n air] carrier, you must promptly provide or ensure the provision of assistance requested by or on behalf of passengers with a disability"). Specifically, airlines *alone* are obligated "to provide or ensure the provision of assistance to passengers with disabilities in moving through the terminal: e.g., between the terminal entrance and the gate, between gate and aircraft." 14 C.F.R. § 382.91(d). Even more specifically, airlines *alone* are obligated to provide wheelchair assistance during "enplaning and deplaning." 14 C.F.R. § 382.95(a). And even more specifically still, airlines *alone* have the obligation to provide or ensure the provision of assistance during emplaning and using, as needed, "the services of personnel and the use of ground wheelchairs, accessible motorized carts, boarding wheelchairs [i.e., "aisle chairs"[4]], and/or on-board wheelchairs." *Id.*

Thus, the ACAA and its implementing regulations establish the duty exclusively owed by airlines for the provision of assistance to passengers with disabilities in "traversing the air terminal before, between, and after flights." *Gilstrap*, 709 F.3d at 1007; *see also Weikert v. Delta Air Lines, Inc.*, No. CV 20-11277, 2021 WL 5988283, at *3 (E.D. Mich. Oct. 25, 2021) ("The ACAA and its

---

[4] "An 'aisle chair (also referred to as a straight back or high back) is a small wheelchair that is used to transport immobile passengers from their own wheelchair to a seat on the airplane.'" *Brooks v. Prospect of Orlando, Co.*, No. 3:16-CV-1089-J-34JBT, 2017 WL 6319552, at *2 (M.D. Fla. Dec. 11, 2017) (citing Boarding the Airplane at https://wheelchairtravel.org/air-travel/aisle-chair-boarding-airplane-disability/). Transfers to an aisle chair usually occur in the jet bridge. *See id.* ("[P]roceed down the jet bridge to the door of the aircraft. Aisle chairs are parked alongside the passenger's own wheelchair to allow for an easy side-to-side transfer. If you are unable to perform the transfer yourself, the wheelchair assistance contractors are able to lift you into the aisle chair.").

implementing regulations…*require [air] carriers* to make aircraft, other facilities, and services accessible; and require carriers to take steps to accommodate passengers with disabilities.") (emphasis added); *Summers v. Delta Air Lines, Inc*., 805 F.Supp.2d 874, 883, 885 (N.D. Cal. 2011) ("The ACAA regulates with specificity an *airline's obligations* with respect to boarding and deplaning assistance…the ACAA focuses on the *carriers' obligations* to provide wheelchair assistance…to enable disabled passengers to [em]plane.") (emphasis added); *Edick v. Allegiant Air, LLC*, No. 2:11-CV-259 JCM GWF, 2012 WL 1463580, at *3 (D. Nev. Apr. 27, 2012) ("The regulations promulgated under the ACAA establish with specificity an *air carrier's obligations* to provide disabled passengers with assistance.") (citing 14 C.F.R §§ 382.91, 382.95(a)) (emphasis added); *Brown v. Alaska Air Grp., Inc.*, No. CV-11-0091-WFN, 2011 WL 2746251, at *5 (E.D. Wash. July 14, 2011) ("the ACAA and its regulations *require airlines* to provide the services of personnel and the use of ground wheelchairs, accessible motorized carts, boarding wheelchairs, and/or on-board wheelchairs.") (emphasis added).[5]

An airline's provision of the foregoing wheelchair services can be, and often is, contractually assured through an independent wheelchair service provider. *See e.g.*, *Hall v. Delta Air Lines, Inc.*, No. 2:16-CV-00417-JAW, 2018 WL 1570788, at *2 (D. Me. Mar. 30, 2018) ("[airline] contracted with [vendor] to perform passenger assistance services for [airline's] passengers at the Portland International Jetport in Portland, Maine, including the transfer of passengers to and from wheelchairs to aircraft seats with the aid of aisle chairs and assistance to passengers in boarding and deplaning."); *Brooks*, 2017 WL 6319552 (same).

Here, pursuant to the foregoing framework, Huntleigh provided a wheelchair agent,

---

[5] The cited cases discuss whether or to what extent a passenger's claims against an airline are federally preempted by the ACAA; however, such issues are not germane to the present issues of the City's fraudulent joinder and this Court's diversity jurisdiction.

Starkey, who used the aisle chair to assist Plaintiff in emplaning on his Frontier flight. Consistent with the ACAA, Frontier ensured the provision of Plaintiff's wheelchair assistance by and through its agreement with Huntleigh. (Doc #:1-3) Frontier's answer to Plaintiffs' Complaint admits that Huntleigh provided wheelchair services for Frontier at CLE during the relevant period. (Doc #:3 PageID 60) The Huntleigh statement regarding its employee and wheelchair agent, Starkey, further shows that assistance was being provided to Plaintiff by Huntleigh between the gate and the aircraft, in emplaning, and using an aisle chair. (**Ex. A**) Plaintiff allegedly fell and was injured during this process because of the alleged movement, condition, and/or management of the aisle chair. (Doc #1-2 at ¶4)

As shown above, there is absolutely no basis for alleging or finding that the City owed any duty to Plaintiff relative to the aisle chair and/or wheelchair agent that allegedly were the sole causes of Plaintiff's fall and injury. The Court should find that there is no factual or legal basis for claiming that the City is liable for any alleged movement, condition, and/or management of the aisle chair. As a matter of law, Plaintiffs have failed to state a colorable claim against the City, there is no purpose to prosecute the action against the City, and the City has no connection to controversy. Accordingly, the City has been fraudulently joined, and this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

## IV.     ARGUMENTS AND AUTHORITIES

### A.     Fraudulent Joinder Standards

Diversity jurisdiction has been established in all respects here, although the Court has requested clarification on the issue of the City's fraudulent joinder. Removal based on diversity jurisdiction is proper if the non-diverse or forum-defendant parties were fraudulently joined. *See Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (the "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds"). That is, fraudulent

joinder is "an exception to the requirement of complete diversity." *Id.* at 492.

"Fraudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action." *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009) (citing *Jerome-Duncan, Inc. v. Auto-By-Tel L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999)). When determining whether a party has been fraudulently joined, the Court applies "a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias*, 609 F.3d at 433. "In fraudulent joinder cases, the underlying reason for removal is that there is no factual basis upon which it can be claimed that the resident defendant is jointly liable or where there is such liability there is no purpose to prosecute the action against the resident defendant in good faith." *Brady v. Indem. Ins. Co. of N. Am.*, 68 F.2d 302, 303 (6th Cir. 1933). "When this occurs, the district court disregards the fraudulently joined non-diverse party for removal purposes." *Brazell v. Waite*, 525 Fed. App'x 878, 881 (10th Cir. 2013) (citations omitted).

### B.    As a Matter of Law, the City Had No Duty to Provide the Aisle Chair or the Wheelchair Agent, Which Were Provided by Frontier and Huntleigh Under the ACAA and Part 382.

As set forth *supra* at II. D., the ACAA and 14 C.F.R. Part 382 prescribe the duties for providing wheelchair assistance to passengers with disabilities in emplaning, including emplaning through the use of an aisle chair. (14 C.F.R. § 382.95(a)) The ACAA and Part 382 exclusively impose those duties on airlines, only. (14 C.F.R. §§ 382.91(d), 382.95(a)) As a matter of law, the City cannot be construed as an airline or have any liability under the ACAA and Part 382. Additionally, consistent with the ACAA and Part 382, Plaintiffs do not allege any facts showing that the City or its employees or agents engaged in any aspect of the provision, use, movement, condition, management, or staffing of wheelchairs for any passengers at CLE, including the aisle chair from which Plaintiff allegedly fell. Instead, consistent with the ACAA and Part 382, Frontier – which *is* a carrier under the ACAA – provided wheelchair assistance, including an aisle chair

10

and a wheelchair agent, by and through its agreement with Huntleigh.

**C.      There Is No Factual Basis Whatsoever and Plaintiffs Otherwise Fail to State Claims Against the City Under Either Title 49 or Title 29.**

Plaintiffs attempt to evade the exclusive duties imposed by the ACAA and Part 382 on airlines, only, by instead alleging that the City owed duties to Plaintiff "[u]nder 49 USC and 29 USC." (Doc #: 1-2 at ¶6) However, there is no factual basis whatsoever for claiming that the City is liable under either Title 29 or Title 49.

**1.      Plaintiffs Do Not Allege That the Terminal Buildings or Facilities at CLE Were Inaccessible, So Plaintiffs' Title 29 Claim Against the City Fails As a Matter of Law.**

Plaintiffs' Complaint alleges "Section 502 29 USC 792 requires that airports and airlines in [sic] their respective agents are required to make their facilities accessible for handicapped people." (*Id*. at ¶9) Defendants allegedly "breached that duty of care in allowing Plaintiff to fall from the 'aisle chair' which was not properly managed or equipped. (*Id*. at ¶10) Plaintiffs also allege that "the absence of a second employee to help him with the transfer to and the movement of the 'aisle chair' constitutes a willful and wanton and reckless disregard for Plaintiff in a disgraceful violation of 29 USC 92 [sic]." (*Id*. at ¶11)  As a matter of law, these allegations fail to state a Title 29 claim against the City.

The Architectural Barriers Act of 1968 ("ABA"), 42 U.S.C. §§ 4151-57,

> stipulates that all ***buildings*** which are (1) financed with Federal funds, and (2) intended for use by the public, or which may result in employment or residence therein of physically handicapped persons, be ***designed*** and ***constructed*** in accordance with standards prescribed by the ABA to ensure that such ***buildings*** are fully accessible to and usable by handicapped individuals. The Act is enforced by the Architectural and Transportation Barriers Compliance Board ("ATBCB"), a Federal agency created by Section 502 of the Rehabilitation Act of 1973 [29 U.S.C. § 701 *et seq*.].

DOL Program for Ensuring that Buildings & Facilities are Accessible to & Usable by Handicapped

Persons,             https://www.dol.gov/agencies/oasam/centers-offices/civil-rights-center/dlms2-

0600#:~:text=The%20Architectural%20Barriers%20Act%20(ABA,constructed%20in%20accord

ance%20with%20standards (emphasis added).

As for the Rehabilitation Act regulations, "the rule applicable to airport facilities…provides that 'Airport operators shall ensure that the **terminal facilities and services** subject to this section shall be readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.'" *Kasten v. Port Auth. of New York & New Jersey*, No. 98-CV-4988, 2002 WL 31102689, at *3 (E.D.N.Y. Sept. 10, 2002) (quoting 49 C.F.R. § 27.71).

As an initial matter, pervasive authority holds that "a plaintiff cannot bring a private cause of action pursuant to the ABA, at least not without first presenting a claim to the ATBCB." *Logan v. Matveevskii*, 175 F. Supp. 3d 209, 232 (S.D.N.Y. 2016) (compiling cases).

Even when a private right of action is not contested, however, any such claim must allege that the plaintiff was denied a service or facility of the airport. For example, in *Nodleman v. Aero Mexico*, plaintiffs alleged that "it was the airline's policy not to carry wheelchair users because the airline was unable to get them on and off the airplanes." *Nodleman v. Aero Mexico*, 528 F. Supp. 475, 480 (C.D. Cal. 1981). The plaintiffs were unsuccessful in obtaining boarding passes or refunds from the airline. *Id*. The plaintiffs alleged that the City of Los Angeles "violated Section 504 [of the Rehabilitation Act] by its failure to ensure that wheelchair users are not denied the services and facilities of LAX [Los Angeles International Airport] and of airlines operating out of LAX solely on the basis of their handicap." *Id*. at 487. However, the court found, "there is no allegation in the amended complaint that plaintiffs were denied any service or facility of LAX" (*id*.), and, "[t]here is no allegation that the equipment mandated by [49 C.F.R. § 27.71] was not provided at the Aero Mexico terminal on the day of plaintiffs' scheduled flight" (*id*. at 491). Thus, the court ruled that the plaintiffs failed to state a claim against the City of Los Angeles, and

12

plaintiffs' claims against the City were dismissed. *Id*. at 491-92.

Here, Plaintiffs' Complaint does not allege any facts giving rise to a duty or colorable claim against the City under Title 29. Plaintiffs' Complaint contains no factual allegations whatsoever regarding the design, construction, accessibility, or usability of any buildings or terminal facilities or services at CLE. The Complaint is completely devoid any allegations regarding the airport's pathways, ramps, edges, railings, barriers, surfaces, distances, clearances, protrusions, obstructions, crossings, landings, thresholds, slopes, boundaries, walks, halls, corridors, aisles, skywalks, tunnels, aisles, doors, gates, entrances, exits, elevators, mechanical lifts, signage, or warnings, whether in the main terminal, concourse, baggage claim, security areas, ticketing areas, security checkpoints, passenger waiting areas, or elsewhere at CLE. Instead, the Complaint only alleges that Plaintiff fell out of a wheelchair due to the alleged movement, condition, and management of the wheelchair provided by Frontier and Huntleigh pursuant to the ACAA and Part 382. Plaintiffs cannot cite to any authority holding that the City or any airport owner/operator can be liable under Title 29 (or otherwise) for the alleged movement, condition, or management of an aisle chair. There is no such authority and no colorable claim against the City under Title 29.

### 2. Plaintiffs Fail to Allege Any Violations of Specific Statutes or Regulations Under "Title 49," and As a Matter of Law Cannot State a Claim Against the City Under the ACAA.

Plaintiffs claim that the City owns and operates CLE, "and as such is subject to Title 49 of the U.S. Code in its duty to provide a safe airport which is adaptive [sic] to handicapped usage." (Doc #: 1-2 PageID#16) Under their "strict liability" claim, Plaintiffs also allege, "[u]nder 49 USC…airports have a duty to protect individuals utilizing these airports…and have a special duty of care in making these facilities safe and accessible to the handicapped." (*Id*. at ¶6) That is the full extent of Plaintiffs' claims against the City pursuant to Title 49.

Title 49 is a vast body of federal statutes governing all of "transportation," and is comprised

of hundreds of sections, including but not limited to: Subtitle I - Department of Transportation (sections 101 to 727), and Subtitle VII – Aviation Programs (sections 40101 to 50105). Additionally, there is an equally vast body of corresponding federal regulations promulgated pursuant to Title 49. In all, these statutes and regulations create *thousands* of separate federal laws – none of which is expressly alleged in Plaintiffs' Complaint, which only alleges that the City is subject to and has duties under "Title 49." This is insufficient to state a claim. On point is the recent case of *Easterling v. Jones* from this Court's sister district, where the court held that defendants' alleged violation of "Title 49 of the Code of Federal Regulations, parts 300-399 and related parts…fail[s] as a matter of law." *Easterling v. Jones*, No. 1:20-CV-00182-GNS, 2021 WL 1723230, at *2 (W.D. Ky. Apr. 30, 2021).[6] Here, Plaintiffs' allegations claim that the City violated "Title 49," without more, is even broader than the claim rejected in *Easterling*. Without any alleged violations of specific statutes or regulations, Plaintiffs' "Title 49" claim fails as a matter of law.

Even if the Complaint could be read to state a claim under "Title 49," without more, any such claim is fatally flawed. Again, Plaintiffs allege that the City had a duty under Title 49 "to provide a safe airport" that is "adaptive to handicapped usage," and to make "these facilities safe and accessible to the handicapped" (Doc #: 1-2) However, Plaintiffs fail to allege any facts showing how the airport facilities at CLE were inaccessible, not adaptive, or otherwise unsafe for Plaintiff. Instead, the Complaint only alleges that Plaintiff fell out of a wheelchair due to the alleged movement, condition, and management of the wheelchair itself. Again, by operation of federal law and the contract between Frontier and Huntleigh, the wheelchair is not and cannot be construed as airport facilities, and the wheelchair was not controlled by the City.

---

[6] Like Ohio, Kentucky is a notice-pleading state. *Russell v. Johnson & Johnson, Inc.*, 610 S.W.3d 233, 240-41 (Ky. 2020) ("Kentucky is a notice pleading jurisdiction, where the 'central purpose of pleadings remains notice of claims and defenses.'…'It is not necessary to state a claim with technical precision under this rule, as long as a complaint gives a defendant fair notice and identifies the claim.'") (citations omitted).

Plaintiffs' claim under "Title 49" could be construed as a claim under the ACAA, 49 U.S.C. § 41705; however, as demonstrated at length above, the ACAA is only applicable to airlines, not airports. Relatedly, the Complaint does not allege that Title 49 imposes a duty on the City to provide Plaintiff with any assistance during the boarding process, whether through the provision of the aisle chair or the accompanying wheelchair agent, which allegedly caused Plaintiff's fall.

**D.      Plaintiffs' Complaint Does Not Allege a Premises Liability Claim Against the City, Nor Do the Alleged Facts Give Rise to a Premises Liability Claim As a Matter of Law.**

Plaintiffs' five-page Complaint does not make any references to the airport "premises." (Doc #: 1-2) Nevertheless, Plaintiffs' motion to remand references "premises" 17 times in only four pages. (Doc #: 12) Clearly, this tactic demonstrates Plaintiffs' attempted departure from their ill-plead Title 29 and Title 49 claims in favor of a premises liability claim against the City. Regardless, this is a distinction without a difference and only furthers a finding of fraudulent joinder since Plaintiffs also fail to state a premises liability claim against the City.

The aisle chair that allegedly moved and was not properly equipped or managed cannot be construed as "premises," much less airport premises. Additionally, Plaintiffs rightly do not allege that the City owned, maintained, operated, or controlled the aisle chair. Likewise, the City is not alleged to own, operate, or otherwise control any jet bridges at CLE, much less the specific jet bridge used by Frontier and Plaintiff. Even if the subject jet bridge allegedly was owned or controlled by the City, Plaintiffs do not allege that there were any defects or hazards on the jet bridge – e.g., slippery substances, uneven flooring – in the specific area of the jet bridge where Plaintiff allegedly fell from the wheelchair.

Ohio law does not impose strict liability based on mere possession or control of the premises without a showing of fault. *Albright, ex rel. Albright v. Univ. of Toledo*, No. 01AP-130, 2001 WL 1084461, at *4 (Ohio Ct. App. Sept. 18, 2001); *see also Tucker v. Pope*, 2010-Ohio-995,

¶ 15 (2d Dist.) (Ohio law does "not impose strict liability on the owner for all injuries on the premises."); *Paschal v. Rite Aid Pharmacy, Inc*., 18 Ohio St.3d 203, 480 N.E.2d 474 (1985) (A business owner is not "an insurer of the customers' safety."). Under facts analogous to the case at bar, the plaintiff in *Powers v. Salvation Army* argued that, "because it provides carts for customers' use, a business should be liable for and responsible at all times for injuries to an invitee caused by a cart, no matter who created the hazard." *Powers v. Salvation Army*, 2004-Ohio-7175, ¶ 22 (6th Dist.). The court rejected this argument, ruled that [a]pplying this rationale would create a strict liability standard for any injury occurring on business premises from equipment such as customer shopping or flatbed carts," and affirmed judgment for the defendant. *Id*.

Instead, the duty that an occupier of premises owes to business invitees, if any, "requires such occupier to prevent, remove, or warn against ***a particular hazard***" on the premises." *Anaple v. Standard Oil Co*., 162 Ohio St. 537, 541-542 (1955) (emphasis added). For example, Plaintiffs' motion to remand relies on only two cases: *Hammond v. City of Cleveland* and *Bowen v. Columbus Airport, L.P.* (Doc #: 12) As faithfully cited in Plaintiffs' motion, the plaintiff in *Hammond* allegedly tripped over a particular hazard on the airport premises: namely, an allegedly elongated staircase stringer in concourse D at CLE. *Hammond v. Cleveland*, 2012-Ohio-494, ¶ 2. Although not cited in Plaintiffs' motion, the plaintiff in *Bowen* allegedly slipped and fell because of a particular hazard at the Columbus Airport Marriott hotel: namely, "ice covering the parking lot." *Bowen v. Columbus Airport Ltd. P'ship*, 2008-Ohio-763, ¶ 2.

Here, there are absolutely no alleged hazards whatsoever on any airport premises, much less any "particular hazards" such as a stair stringer or ice, that caused Plaintiff to fall. Instead, Plaintiff allegedly fell only because of the alleged movement, condition, and management of the

aisle chair. Absent any alleged defects or hazards on the airport premises, Plaintiffs fail to state a colorable premises liability claim against the City.

Whether under Title 29 or Title 49, as alleged in the Complaint, or under premises liability, as argued in the motion to remand, Plaintiffs have failed to state a claim against the City. Thus, the fraudulent joinder of the City cannot defeat removal on diversity grounds. *Coyne*, 183 F.3d 488 at 493. Therefore, the Court should retain diversity jurisdiction under Section 1332(a)(1).

### E. Even Without Finding Fraudulent Joinder and Diversity Jurisdiction, This Court Has Federal Question Jurisdiction Under Section 1331.

In addition to alleging diversity jurisdiction and fraudulent joinder of the City, the Notice of Removal also alleged federal question jurisdiction under Section 1331 is a separate and alternative basis for removal and original jurisdiction. *See Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 946 (6th Cir. 1994) ("The defendant's notice claimed **alternative bases for removal**: (1) diversity jurisdiction based upon fraudulent joinder of individual defendants, and (2) federal question jurisdiction.") (emphasis added); *Strong v. Telectronics Pacing Sys., Inc.*, 78 F.3d 256, 258 (6th Cir. 1996) (same). As demonstrated above, the Court should find that Plaintiffs have failed to state claims against the City under Titles 29 and 49. If the Court finds that such claims are colorable, however, then the alleged violations of Title 29 and/or Title 49 by the City, as well as the other Defendants, confers federal question jurisdiction under Section 1331.

"[F]ederal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law (e.g., claims under 42 U.S.C. § 1983)." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S. Ct. 2363, 2366, 162 L. Ed. 2d 257 (2005); *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916) ("A suit arises under the law that creates the cause of action.").

17

Relevant to the Title 29 allegations against the City here, this Court and others have held that pleading a cause of action under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*., invokes federal question jurisdiction. *See e.g.*, *Miglets v. Erie Lackawanna Ry. Co.*, No. C78-1231Y, 1979 WL 205, at *3 (N.D. Ohio Feb. 28, 1979) ("Alleging jurisdiction under 28 U.S.C. § 1331 (federal question)…plaintiff [] brings this action under section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq*."); *Roddy v. Shong*, No. C83-762, 1983 WL 654, at *1 (N.D. Ohio Nov. 30, 1983) ("Jurisdiction was invoked under 28 U.S.C. § 1331 for federal questions relating to the Rehabilitation Act of 1973, 29 U.S.C. § 793."); *see also*, *Freeman v. Sullivan*, 954 F. Supp. 2d 730, 736-37 (W.D. Tenn. 2013), aff'd (Dec. 27, 2013) ("The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs raise a federal question under…§ 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq*."); *Harwell v. Tullahoma City Sch.*, No. 421CV00008TRMCHS, 2021 WL 6275686, at *1, *3 (E.D. Tenn. May 27, 2021) ("Plaintiffs bring claims for, *inter alia*, violations of the Rehabilitation Act, 29 U.S.C. § 701 *et seq*… this Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331."); *Kowalski v. Postmaster Gen. of United States*, 811 F. App'x 733, 736 (3d Cir. 2020) ("exercising federal-question jurisdiction over the lawsuit" under the Rehabilitation Act); *Lieberman v. Delaware*, 70 F. App'x 630, 631 (3d Cir. 2003) ("the District Court had jurisdiction over the Rehabilitation Act claims."); *Fallon v. Meissner*, 66 F. App'x 348, 350 (3d Cir. 2003) ("The District Court had federal question jurisdiction of [plaintiff's]…Rehabilitation Act claims under 28 U.S.C. § 1331"); *Fisher v. City of Tucson*, No. CIV 77-037-TUC-MAR, 1977 WL 15530, at *1 (D. Ariz. Nov. 23, 1977), aff'd, 663 F.2d 861 (9th Cir. 1981) ("Plaintiff asserts a private right of action pursuant to Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793…the Court has original jurisdiction of the cause pursuant to 28 U.S.C. § 1331(a).").

18

Likewise, if Plaintiffs' "Title 49" claim against Frontier is construed as a claim under the ACAA, 49 U.S.C. § 41705, as well as the accompanying regulations under 14 C.F.R. Part 382, then there is additional authority supporting the exercise of federal question jurisdiction. *See e.g.*, *VanWyngarden v. Am. W. Airlines, Inc*., No. 4:05-CV-00024, 2005 WL 8157980, at *2 (S.D. Iowa June 14, 2005) ("[T]he Court finds plaintiff's express allegations of violation[s] of the ACAA and violation of federal aviation statutes in 14 C.F.R. Part 382 present federal questions which implicate original jurisdiction in this Court."); *Est. of Kekona v. Alaska Airlines, Inc*., No. C18-0116-JCC, 2018 WL 1317826, at *1 (W.D. Wash. Mar. 14, 2018) ("Alaska [Airlines] removed the matter to this Court…based on the federal question implicated by the complaint, which asserts a breach of Alaska's duty to [plaintiff], as established by the Air Carrier Access Act.").

Finally, to the extent necessary, this Court should exercise supplemental jurisdiction under Section 1367(a). *See Griffin v. Sanders*, 914 F. Supp. 2d 864, 869 (E.D. Mich. 2012) ("the underlying civil action presents federal questions regarding…the Rehabilitation Act…along with pendent state law claims"); *see also VanWyngarden*, 2006 WL 8436778, at *1 ("The Court has federal question jurisdiction over the ACAA claim, 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claim, 28 U.S.C. § 1367(a)."); *Triplet v. Nw. Airlines, Inc*., No. 4:08CV04074 JLH, 2009 WL 1812904, at *1 (E.D. Ark. June 24, 2009) ("[Plaintiff] brought this action against Northwest Airlines, the Little Rock Municipal Airport Commission, and the City of Little Rock, Arkansas, for breach of contract, violations of the Arkansas Civil Rights Act…and the Air Carrier Access Act, 49 U.S.C. § 41705, and for negligence, battery, outrage, and fraud. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.").

Thus, even if the Court determines that the City was not fraudulently joined, the foregoing shows why this matter should not be remanded for lack of subject matter jurisdiction.

Respectfully submitted,

TAFT STETTINIUS & HOLLISTER LLP

By: /s/ Scott R. Torpey
        Scott R. Torpey (0081561)
        Timothy J. O'Connell (0097276)
*Attorneys for Defendants Frontier Airlines, Inc., and the City of Cleveland*
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034-8214
(248) 351-3000
storpey@taftlaw.com
toconnell@taftlaw.com

## LOCAL RULE 7.1(f) CERTIFICATION

I hereby certify that this case has not been assigned to a track, and the foregoing memorandum adheres to the page limitations set forth in LR 7.1(f).

By:    /s/ Scott R. Torpey

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2023, I caused the foregoing document to be electronically filed with the Clerk of the Court using the ECF system, which sent notification of such filing upon all ECF Participants.

By:    /s/ Scott R. Torpey

129934680v1

20